# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EXHIBITION ON SCREEN, LTD.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **DEREK PEW** | : | **NO. 18-3212** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                                **December 19, 2018**

Plaintiff Exhibition on Screen, Ltd., ("EOS") a British documentary filmmaker, entered into a distributorship agreement with Mediacast Holdings LLC, d/b/a Specticast ("Mediacast"), a Pennsylvania limited liability company. EOS has sued defendant Derek Pew, an officer and director of Mediacast, who signed the agreement on behalf of the company. EOS seeks to recover its share of monies it contends Mediacast failed to turn over from the proceeds from the distribution and showing of three films it had produced. Having already obtained a judgment against Mediacast on the agreement, EOS now seeks to collect from Pew, contending he is a trustee of the monies owed EOS under the agreement. In short, EOS argues the agreement created a trust to hold EOS's share of the proceeds and Pew failed to turn over the trust funds.

Pew has moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. He argues that EOS has not stated a cause of action for breach of trust because there was no trust. Pew contends that even if one had been created, he cannot be liable because the agreement was between EOS and Mediacast, not between EOS and him.

We conclude that EOS has failed to state a cause of action against Pew for breach of trust. Pew was not a trustee of the trust created to hold EOS's share of theater receipts. Therefore, we shall grant Pew's motion to dismiss.

**Background**

EOS produces documentary films about famous artists and their works.[1] The films are presented through distributors who arrange showings with theaters.[2] Mediacast agreed to distribute three films produced by EOS in North America.[3]

EOS and Mediacast entered into a distributorship agreement on November 1, 2016.[4] Under the agreement, Mediacast contracted with theaters to screen the films and generate box office receipts.[5] From the box office receipts, each theatre retained its share and remitted the balance to Mediacast.[6] From that amount, Mediacast deducted its share and costs, yielding "Net Receipts."[7] The agreement provided that the net receipts were to be "held in trust for EOS."[8] Despite its repeated demands, EOS received no payments, books, or records of the films.[9] Mediacast closed its business in January 2018.[10]

---

[1] Compl. ¶¶ 5, 9 (ECF No. 1).

[2] *Id.* ¶ 11.

[3] *Id.* ¶¶ 11, 24.

[4] *Id.* ¶ 16.

[5] *Id.*

[6] *Id.* ¶ 12.

[7] *Id.*

[8] *Id.*

[9] *Id.* ¶¶ 27-33, 42.

[10] *Id.* ¶ 28.

On November 29, 2017, EOS filed a related suit against Mediacast to recover its share of the receipts generated by the screenings of its films arranged by Mediacast.[11] Mediacast never responded. Default judgment was entered against Mediacast in the amount of $216,039.68 on February 27, 2018.[12]

On July 30, 2018, EOS filed this action against Pew, in his individual capacity, for breach of trust. It alleges that Pew was a managing director, officer, executive, and member of Mediacast.[13] The complaint states that "Pew personally negotiated, and executed" the EOS agreement "on behalf of Mediacast . . . ."[14] It further alleges that Pew had "ultimate control of [Mediacast's] financial and accounting affairs . . . ."[15] EOS claims Pew breached his fiduciary duties of care and maintenance of the funds "held on trust for EOS" when he closed the company without remitting any net receipts.[16] The complaint avers that "instead of duly preserving or remitting [the funds], [Pew] and his company used their status as trustee [*sic*] to gain ready access to EOS' Net Receipts and use them for personal, unauthorized purposes without notice or consent of the trust beneficiary, EOS."[17]

---

[11] *See Exhibition on Screen, Ltd. v. Mediacast Holdings, LLC, d/b/a Specticast*, No. 2:17-cv-05362 (E.D. Pa. Nov. 29, 2017).

[12] *Id.*

[13] Compl. ¶¶ 6, 11.

[14] *Id.* ¶ 8.

[15] *Id.* ¶ 40.

[16] *Id.* ¶¶ 27-28.

[17] *Id.* ¶ 29.

## Standard of Review

Pursuant to Rule 12(b)(6), a court may dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557).

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that the cause of action can be established.

In assessing the sufficiency of a complaint, a court must: (1) identify the elements of the causes of action; (2) disregard conclusory statements, leaving only factual allegations; and (3) assuming the truth of those factual allegations, determine whether they plausibly give rise to an entitlement to relief. *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (internal quotation marks and citations omitted) (quoting *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

**Analysis**[18]

In moving to dismiss the complaint, Pew argues that he cannot be held personally liable for the actions and obligations of Mediacast, and he had no trustee or fiduciary relationship with EOS. Additionally, he contends the claim, which is grounded in a breach of a contract, is barred by the gist of the action doctrine.

*Breach of Express Trust*

To establish an express trust, there must be (1) an express intention to create a trust, (2) an ascertainable and definite subject matter, (3) a beneficiary, and (4) a trustee to administer the trust for the benefit of the beneficiary. *In re Brockway Pressed Metals, Inc.*, 363 B.R. 431, 440 (W.D. Pa. 2007), *aff'd sub nom. In re Brockway Pressed Metal, Inc.*, 304 F. App'x 114 (3d Cir. 2008) (citing *In re Vosburgh's Estate*, 123 A. 813, 815 (Pa. 1924)).

Contrary to Pew's contention that the complaint does not sufficiently allege an express trust, it does. The parties to the agreement, EOS and Mediacast, expressly stated their intention that Mediacast would hold EOS's share of the box office receipts in trust. Consequently, the net receipts were to be segregated and not commingled with Mediacast's funds. The subject matter was clearly defined as "Net Receipts." The trustee was designated as Mediacast. Thus, a trust was created.

Even though the agreement created a trust with EOS as beneficiary, EOS has not stated a cause of action against Pew for a breach of the trust. The complaint does not allege that Pew agreed to serve as the trustee or personally assume any duties.

---

[18] EOS assumes that English law applies because its contract with Mediacast has a choice of law provision, § 9(c). Because Pew was not a party to the contract, Pennsylvania law, not English law, applies.

5

Pew was not a party to the agreement. Mediacast, not Pew, agreed to hold the receipts in trust for EOS. Although Pew signed the agreement, he did so "for and on behalf" of Mediacast.[19] Because Pew unambiguously signed on behalf of Mediacast, he is not personally liable. See 13 Pa. C.S.A. § 3402(b)(1); see also *Enza, Inc. v. We The People, Inc.*, 838 F. Supp. 975, 979 (E.D. Pa. 1993) (complaint did not allege individual defendants were parties to the partnership agreements at issue and thus they could not be legally bound by them) (citing *Marshall v. Port Auth.*, 568 A.2d 931, 936 (Pa. 1990)); (other internal citations omitted).

EOS argues that by accepting delivery of the monies to be held in trust by his notations on receipts, Pew "accepted" his status as trustee.[20] Not only is this argument contradicted by the allegations in the complaint, it is legally wanting. Noting receipt of funds, a ministerial act, does not make Pew a trustee. Even if it did, EOS does not allege that Pew accepted them as a trustee. It alleges that Pew "instructed *his accounting department at Mediacast* to document the amount of each Net Receipts trust fund payment . . . ."[21] The next paragraph alleges "*Mediacast's staff* has handwritten notations on each theatre's box office receipt recording the fact that the Net Receipts belong 50% to EOS."[22] Instructing Mediacast's accounting department to record the receipts does not makes him a trustee. In any event, these allegations show that Pew was merely acting as an agent for Mediacast.

---

[19] Compl. ¶¶ 8, 15, 19.

[20] Pl.'s Sur-Reply 1-2 (ECF No. 10).

[21] Compl. ¶ 25 (emphasis added).

[22] *Id*. ¶ 26 (emphasis added).

The complaint sufficiently alleges the existence of a trust. However, it does not state a cause of action for breach of the trust against Pew.

*Breach of Constructive Trust and Participation Theories*

In responding to the motion to dismiss, EOS introduces two additional theories of liability—constructive trust and participation liability.[23] Both new theories are premised on a trust of which Pew is the purported trustee. Neither theory survives because Pew is not a trustee under any circumstances.

Under Pennsylvania law, "a constructive trust is not a real trust but rather an equitable remedy utilized to avoid unjust enrichment." *Brockway*, 363 B.R. at 453 (internal citations omitted). Pennsylvania's Supreme Court has stated "[a] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Buchanan v. Brentwood Fed. Sav. & Loan Ass'n*, 320 A.2d 117, 126 (Pa. 1974); *Yohe v. Yohe*, 353 A.2d 417, 421 (Pa. 1976); *Nagle v. Nagle*, 799 A.2d 812, 819 (Pa. Super. Ct. 2002).

"An equitable duty to convey the property arises only in the presence of fraud, duress, undue influence, mistake or . . . abuse of a confidential relationship." *Brockway*,

---

[23] EOS also argues that Pew can be held personally liable for breach of trust as an active owner and officer who failed to preserve the trust held by the company. Pl.'s Opp'n 16-17 (ECF No. 8) (citing *City of Phila. v. Penn Plastering Corp.*, 434 Pa. 122 (1969); *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415 (3d Cir. 2005); *Shepard v. K.B. Fruit & Vegetable, Inc.*, 868 F. Supp. 703 (E.D. Pa. 1994); *Mid-Valley Produce Corp. v. 4-XXX Produce Corp.*, 819 F. Supp. 209 (E.D.N.Y. 1993); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346 (S.D.N.Y. 1993); and *W. Indian Sea Island Cotton Ass'n Inc. v. Threadtex, Inc.*, 761 F. Supp. 1041 (S.D.N.Y. 1991)).

These cases are inapplicable because liability attaches only in extremely narrow circumstances that do not exist here. The *Penn Plastering* court limited its holding, imposing liability on officers of a corporation who collected taxes as an agent for a city and failed to remit those taxes. 434 Pa. at 124. The other cases involved claims under the Perishable Agricultural Commodities Act of 1930, where a trust relationship and officer's fiduciary duties are statutorily created. *See, e.g., Weis-Buy*, 411 F.3d at 419-21 (citing H.R.Rep. No. 98-543 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406).

363 B.R. at 453 (quoting *Yohe*, 353 A.2d at 241). EOS bears a "heavy burden" in seeking to have a constructive trust imposed, as "[t]he evidence must be clear, direct, precise and convincing." *Id.* (internal citations omitted). Key to determining whether to impose a constructive trust is whether, in doing so, we would avoid or prevent unjust enrichment. *Id.*

The complaint fails to cite any "clear, direct, precise, and convincing" facts showing that a constructive trust existed between Pew personally and EOS. *Id.* EOS attempts to transform Pew's status as an officer and member of Mediacast into one of a trustee. It does so to overcome the clear designation of Mediacast as the sole trustee. As EOS itself alleges, Pew was acting on behalf of Mediacast. In its opposition brief, EOS reiterates that Pew, in his capacity as an "owner, officer, director, and employee *of an LLC which accepted legal title* to Plaintiff's funds . . . retained the funds, refused to return them, refused to account for them in separate books and records, then went insolvent and kept Plaintiff's funds."[24] Significantly, EOS acknowledges that Pew accepted the funds as an agent, not as the principal of Mediacast.[25]

The participation theory imposes liability on a corporate officer who personally directed or participated in a tortious act. *Accurso v. Infra-Red Servs., Inc.,* 23 F. Supp. 3d 494, 507 (E.D. Pa. 2014) (quoting *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 614-22 (1983)). In that instance, the corporate officer may be liable for misfeasance. *Chester Cambridge B. & T. v. Rhodes*, 31 A.2d 128, 131 (1943). But, if the corporate officer does not make a promise in his individual capacity, he cannot be liable under the

---

[24] Pl.'s Opp'n 12 (emphasis added).

[25] *Id.* at 14.

participation theory. *Id.* (quoting *Walsh v. Alarm Sec. Grp.*, Inc., 95 Fed. Appx. 399, 402 (3d Cir. 2004)). Stated differently, for the agent for the corporation to be held personally liable, "he must have made promises while acting in his individual capacity—that is, intending to bind himself personally." *Id.* (internal citations omitted).

Nowhere in the complaint does EOS allege Pew, in his individual capacity, made promises or intended to bind himself personally to Mediacast's contract. The acts EOS attributes to Pew were done as Mediacast's agent. The complaint alleges that Pew "personally negotiated, and executed, an agreement on behalf of Mediacast" and that it was "Defendant's company's agreement to hold" the funds on trust for EOS.[26] Specifically, it alleges Pew "stated his company declare[s] that it shall hold [net receipts] on trust for EOS," instructed the accounting department to document receipts, failed to preserve the trust funds, and had ultimate control of the financial and accounting.[27] These alleged facts do not provide a basis for holding Pew liable under a participation theory. Pew cannot be liable for Mediacast's breach of its contractual duties.

EOS seeks to hold Pew personally liable by alleging that in failing to preserve the trust funds, he breached "his fiduciary duty" as a corporate officer and director. If Pew owed a fiduciary duty, it was to Mediacast with whom he had a relationship, not to EOS, with whom he had no relationship.

---

[26] Compl. ¶¶ 8, 41-43.

[27] *Id.* ¶¶ 19, 25, 37, 40.

*Leave to Amend*

EOS requests leave to amend its complaint under Rule 15(a)(2) to cure any deficiencies. Fed. R. Civ. P. 15(a)(2). Pew does not address EOS's request for leave to amend, nor does he argue that he would suffer any prejudice by an amendment.

Given the liberality of Rule 15(a), we shall allow EOS to file an amended complaint. If it elects to do so, EOS must state with particularity the facts upon which it relies to show that Pew, in his personal capacity, is liable.

## Conclusion

EOS has not stated a cause of action against Pew for breach of trust. Therefore, we shall grant Pew's motion to dismiss and grant EOS leave to file a motion to amend its complaint.